UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
STEPHANIE SHAMAH,

                Plaintiff,                      **COMPLAINT**
                                                  **JURY TRIAL DEMANDED**

  -against-

THE STANDARD AT HV, LLC d/b/a
MISSION TACO, and MATTHEW HAFFNER,
in his individual capacity,
                        Defendants.
-----------------------------------------------------------x

Plaintiff, Stephanie Shamah, (hereinafter "Plaintiff") by her attorneys, SLATER SLATER SCHULMAN LLP, hereby complains of Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII") and New York State Executive Law §296, et seq. ("NYSHRL"). Plaintiff seeks damages to redress the injuries she suffered as a result of battery based on gender/sex, discrimination based on gender/sex, retaliation, and wrongful termination/constructive discharge.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this action involves a federal question under Title VII of the Civil Rights Act. The Court also has supplemental jurisdiction over the State causes of action.

3. Venue is proper in this District based upon Defendants' place of business being within Suffolk County, State of New York, within the Eastern District of New York. 28 U.S.C.§1391 (b).

4. On or around July 18, 2022, Plaintiff Stephanie Shamah filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) against Defendant Mission Taco as set forth herein.

5. On or about November 3, 2022, Plaintiff Shamah received the EEOC Notice of Right to Sue.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the EEOC Notice of Right to Sue.

## PARTIES

7. Stephanie Shamah (hereinafter "Plaintiff") is a single female who resides in Nassau County, New York.

8. Plaintiff is a covered employee within the meaning of Title VII of the Civil Rights Act and New York Executive Law §290 et seq. ("NYSHRL").

9. Defendant The Standard at HV, LLC, d/b/a Mission Taco (hereinafter "Defendant" or "Mission Taco") employed Plaintiff as a server from around August 2021 until around December 17, 2021.

10. Defendant Mission Taco was and is a domestic limited liability company organized and existing by virtue of the laws of the State of New York.

11. Defendant is a covered employer within the meaning of Title VII of the Civil Rights Act and New York Executive Law §290 et seq. and at all relevant times, employed Plaintiff.

12. Defendant The Standard at HV owns and operates Mission Taco, a Mexican restaurant in Huntington, New York.

13. Defendant Matthew Haffner (hereinafter "Defendant" or "Haffner") was employed by Defendant Mission Taco as a shift manager and supervised Plaintiff regularly.

## FACTS

14. Defendants hired Plaintiff on or around August 2021 as a server.

15. Upon hire and throughout Plaintiff's employment, Defendants did not provide Plaintiff with sexual harassment or discrimination training, nor did Defendants request proof of completion of any such training.

16. During Plaintiff's employment, she was typically the only female scheduled to work in the front area of Defendant Mission Taco's restaurant.

17. On December 13, 2021, Defendants hosted a holiday party for the staff, which Plaintiff attended.

18. In the early morning of December 14, 2021, following Defendants' December 13, 2021, holiday party, Defendant Haffner sexually assaulted Plaintiff.

19. During Defendants' holiday party and throughout the evening of December 13, 2021, Defendant Haffner sexually harassed Plaintiff and made unwanted advances towards Plaintiff.

20. Plaintiff rejected each and every one of Defendant Haffner's advances.

21. Throughout the evening of December 13, 2021, Defendant Haffner made inappropriate comments to Plaintiff such as, "**get this girl another drink**," and "**you don't really love your boyfriend**."

22. Plaintiff felt uncomfortable by Defendant Haffner's persistence and inappropriate comments.

23. After Defendants' holiday party, Plaintiff and a group of about seven employees of Defendant Mission Taco went to a bar, and then a nightclub.

24. This group consisted of Defendant Haffner, Defendants' Unnamed Bartender ("Unnamed") and her guest, Jane Doe ("Jane Doe"), Defendants' Bartender Manny (Last Name Unknown) ("Manny"), Defendants' Server Kyle (Last Name Unknown) ("Kyle"), Defendants' Server Ryan Broski ("Broski"), and Defendants' Server Kendrick Crawford ("Crawford").

25. At the nightclub, Defendant Haffner sexually assaulted Defendants' Unnamed Bartender.

26. Without consent, Defendant Haffner put his hand in the underwear of Defendants' Unnamed Bartender.

27. Despite Defendants' Unnamed Bartender telling Defendant Haffner to stop, he continued the sexual assault. Defendant Haffner then penetrated Defendants' Unnamed Bartender's vagina with his fingers.

28. At the nightclub, Defendant Haffner continued to sexually assault females within Plaintiff's group.

29. Defendant Haffner also sexually assaulted Jane Doe.

30. Without consent, Defendant Haffner put his hand underneath Jane Doe's shirt.

31. Jane Doe immediately demanded Defendant Haffner stop touching her.

32. In response, Defendant Haffner grabbed Jane Doe's breast and nipple.

33. Shortly thereafter, Jane Doe disclosed the sexual assault to Plaintiff.

34. The knowledge of Defendant Haffner's sexual assault of Jane Doe made Plaintiff feel extremely uncomfortable and she attempted to avoid Defendant Haffner throughout the evening.

35. After leaving the nightclub together, the group of employees went to Manny's apartment.

36. While at Manny's apartment, Defendant Haffner continued his campaign of gender discrimination against and sexual harassment of Defendants' female employees.

37. On multiple occasions at Manny's apartment, Defendant Haffner said that he "**wants to bang**" Plaintiff.

38. Plaintiff adamantly rejected Defendant Haffner and firmly stated she was not interested in any sexual or even platonic relations with Defendant Haffner.

39. Defendant Haffner ignored Plaintiff's rejection and continued to make unwarranted and inappropriate comments to her such as, "**I know you don't really love your boyfriend**" and "**I can tell you don't really love him**."

40. On December 14, 2021, at or around 5:00 in the morning, Plaintiff decided to leave Manny's apartment and go home via Uber. Plaintiff intended on traveling alone and entered her address into the Uber application.

41. However, Defendant Haffner joined Plaintiff in the Uber car.

42. Plaintiff feared that if she refused to share the Uber ride with Defendant Haffner, he would retaliate against her at work.

43. Once the ride commenced, Defendant Haffner asked Plaintiff for her phone to add his address to the route in the Uber application.

44. Unbeknownst to Plaintiff at that time, Defendant Haffner removed Plaintiff's address entirely from the Uber application and entered his address as the sole destination.

45. Defendant Haffner began to sexually assault Plaintiff about ten minutes into the Uber ride.

46. Defendant Haffner inched closer to Plaintiff until his leg was touching Plaintiff's leg.

47. Defendant Haffner pressed Plaintiff against the rear passenger door of the Uber car, and then without consent, inappropriately touched Plaintiff.

48. Without consent, Defendant Haffner placed his arm around Plaintiff's shoulders and his other hand on Plaintiff's leg.

49. Plaintiff pushed Defendant Haffner's hand away, squeezed her legs together, leaned forward and shifted her body away from Defendant Haffner, all to make it more difficult for Defendant Haffner to touch her.

50. Defendant Haffner, once again, disregarded Plaintiff's rejection and objection and continued to sexually assault Plaintiff.

51. Without consent, Defendant Haffner moved his hand from Plaintiff's leg to under Plaintiff's dress, moving his hand towards Plaintiff's vagina.

52. Then, without consent, Defendant Haffner rubbed Plaintiff's vagina over her tights.

53. Defendant Haffner asked Plaintiff, "**Why did you have to wear tights?**"

54. Defendant Haffner never asked Plaintiff for consent, ignored Plaintiff's consistent rejections and objections, and continued to forcibly rub Plaintiff's vagina with his fingers.

55. Defendant Haffner attempted to get under Plaintiff's tights multiple times throughout the assault, as to penetrate Plaintiff's vagina.

56. Plaintiff felt violated, uncomfortable, and feared that saying anything else could escalate the situation. Plaintiff also felt trapped, as the assault took place in a moving vehicle on a highway.

57. After about ten minutes of Defendant Haffner forcibly rubbing Plaintiff's vagina with his fingers, Plaintiff realized the Uber car drove past her town, Bethpage, New York, and was on a direct route to Defendant Haffner's town, Copiague, New York. Plaintiff realized Defendant Haffner removed Plaintiff's address from the Uber application entirely.

58. Defendant Haffner only stopped forcibly rubbing Plaintiff's vagina when the Uber car arrived at Defendant Haffner's house.

59. Defendant Haffner exited the Uber car and told Plaintiff, "**[I will] see you at work.**"

60. Immediately, Plaintiff began to cry and disclosed the sexual assault to the Uber driver.

61. On or around December 14, 2021, Plaintiff disclosed the sexual assault to Defendants' Unnamed Bartender.

62. In response, Defendants' Unnamed Bartender disclosed that Defendant Haffner sexually assaulted her as well on the evening of Defendants' holiday party.

63. On December 16, 2021, Plaintiff reported the sexual assault to the Suffolk County Police Department.

64. On December 16, 2021, Plaintiff requested a meeting with Defendants' General Manager Tom Moran ("Moran"), Defendants' Owner Andrew Affa ("Affa"), and Defendants' Owner Steve Squitiro ("Squitiro").

65. In this meeting, Plaintiff complained of the sexual assault and gender discrimination she experienced.

66. In the meeting with Moran, Affa, and Squitiro, Plaintiff provided her email address and two phone numbers so Defendants could contact her regarding her complaints and Defendants' course of action.

67. During this meeting, Plaintiff also shared her willingness to work at Defendants' alternative location, "The Piermont" in Babylon, New York.

68. However, no agent of Defendants contacted Plaintiff regarding her complaints of sexual assault and gender discrimination.

69. No agent of Defendants contacted Plaintiff regarding her schedule or her placement at an alternative location.

70. Defendants took no action to alleviate the discrimination Plaintiff complained of.

71. Defendants never addressed the gender-based battery Plaintiff complained of.

72. Rather than rectifying the gender-based discrimination and battery Plaintiff experienced and complained of, Defendants retaliated against and constructively discharged Plaintiff.

73. After Plaintiff complained to Moran, Affa, and Squitiro, Defendants removed Plaintiff from the schedule and the scheduling system entirely, constructively discharging Plaintiff.

74. As a result of Defendants' actions, Plaintiff felt, and continues to feel, humiliated, degraded, victimized, embarrassed, and emotionally distressed.

75. As a result of Defendants' gender-based battery and discrimination of Plaintiff, Plaintiff suffered numerous injuries including financial, physical, and emotional damages.

76. Due to Defendant Haffner's assault of Plaintiff and the trauma Plaintiff now carries, Plaintiff suffers from heightened stress, sadness, and agoraphobic tendencies.

77. Plaintiff suffered, and continues to suffer, emotional pain, suffering, inconvenience, and other non-pecuniary losses.

78. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendant Mission Taco and Defendant Matthew Haffner.

79. Defendants intentionally discriminated against Plaintiff based on her gender/sex. Defendants also discriminated against Plaintiffs in response to her protected complaints of such discrimination and gender-based battery.

80. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

81. Defendants exhibited a pattern and practice of discrimination and retaliation.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER FEDERAL LAW
*Not Against Individual Defendant*

82. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

83. Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act, 42. U.S.C. § 2000e(f).

84. At all relevant times, Defendant employed in excess of fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. §2000e(b).

85. Pursuant to Title VII, 42 U.S.C. § 2000e-2(a) it is unlawful for an employer to discriminate against an employee because of such employee's gender/sex.

86. Defendant violated Plaintiff's rights afforded by Title VII when Defendant discriminated against Plaintiff because of her gender. Defendant created and maintained a hostile work environment, conducive to sexual assault and discrimination based on gender/sex and were it not for Plaintiff's gender, Defendant would not have discriminated against Plaintiff.

87. Defendant's unlawful acts were intentional, willful, malicious, and in violation of Plaintiff's rights afforded by Title VII.

88. As a result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer damages, in form including, but not limited to, lost income, bonuses, lost future earnings and other future pecuniary losses, severe emotional distress, mental anguish, humiliation, loss of enjoyment of life, pain and suffering, and other non-pecuniary losses.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER FEDERAL LAW
*Not Against Individual Defendant*

89. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

90. Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act, 42. U.S.C. § 2000e(f).

91. At all relevant times, Defendant employed in excess of fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. §2000e(b).

92. Pursuant to Title VII, 42 U.S.C. § 2000e-3(a) an employer may not discriminate against any of its employees because the employee has opposed any practice made unlawful by Title VII.

93. Defendant violated Plaintiff's rights afforded by Title VII when Defendant retaliated against Plaintiff in response to her complaints of gender discrimination and gender-based battery. Defendant constructively discharged Plaintiff after she engaged in the protected activity of complaining of gender discrimination.

94. Defendant's unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

95. As a result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer damages, in form including, but not limited to, lost income, bonuses, lost future earnings and also suffered future pecuniary losses, severe emotional distress, mental anguish, humiliation, loss of enjoyment of life, pain and suffering, and other non-pecuniary losses.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
*Against Corporate and Individual Defendants*

96. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

97. New York State Executive Law §296 provides that "it shall be an unlawful discriminatory practice for an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

98. Defendants engaged in unlawful discriminatory employment practice when they discriminated against Plaintiff based on her gender/sex and created and maintained a hostile work environment. Were it not for Plaintiff's gender/sex, Defendants would not have subjected Plaintiff to a hostile work environment and such discriminatory employment conditions and treatment.

99. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law §296.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
*Against Corporate and Individual Defendants*

100. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

101. New York State Executive Law §296 (7) provides that "it shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies

to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

102. Defendants engaged in such unlawful discriminatory practice when they constructively discharged Plaintiff in response to her complaints of gender/sex discrimination and gender-based battery.

**AS A FIFTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER STATE LAW**
*Against Corporate and Individual Defendants*

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

104. New York State Executive Law §296 (6) provides that "it shall be unlawful discriminatory practice for any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

105. Defendants engaged in unlawful discriminatory practice in violation of New York State Executive Law §296 (6) by aiding and abetting, inciting, compelling, and coercing the discriminatory conduct Plaintiff was subjected to.

**AS A SIXTH CAUSE OF ACTION
FOR CIVIL BATTERY**
*Against Defendant Matthew Haffner*

106. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

107. Under New York law, a claim of sexual battery has the elements of an intentional wrongful sexual contact with another person without their consent.

108. Defendant Haffner intentionally touched Plaintiff when he pressed Plaintiff against the car door, touched Plaintiff's leg and shoulders, and then forcibly rubbed Plaintiff's vagina without her consent.

109. Defendant Haffner intentionally touched Plaintiff when he forcibly rubbed Plaintiff's vagina for **more than ten minutes** without her consent.

110. Defendant Haffner intentionally touched Plaintiff when he attempted to get under Plaintiff's tights and penetrate her vagina with his fingers.

111. Similar to Defendant Haffner's assault of Defendants' Unnamed Bartender, Defendant Haffner seriously attempted to and had every intention of penetrating Plaintiff's vagina with his fingers, as evidenced by his forcible rubbing of Plaintiff's vagina, his efforts to get under Plaintiff's tights and his statement to Plaintiff, "**why did you have to wear tights?**"

112. Defendant Haffner's intentional touching and offensive sexual assault of Plaintiff was carried out without Plaintiff's consent and with complete disregard to Plaintiff's objections and personhood.

**WHEREFORE**, Plaintiff seeks a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964 and New York State Executive Law §296, et seq. by discriminating against Plaintiff based on her gender/sex and retaliating against Plaintiff in response to her protected complaints of such discrimination;

B. Declaring that Defendant Haffner intentionally engaged in civil battery and offensive touching of Plaintiff during her employment with Defendants;

C. Making Plaintiff "whole" for the losses suffered as a result of such unlawful employment practices;

D. Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering;

E. Awarding Plaintiff attorney's fees, costs and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff lost wages, back wages, lost future earnings, compensatory damages, and punitive damages;

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

Dated: Melville, New York
December 12, 2022

Respectfully submitted,

SLATER SLATER SCHULMAN LLP

*John C. Luke, Jr.*

John C. Luke, Jr., Esq.
Geoff Kalender, Esq.
445 Broad Hollow Road, Suite 419
Melville, New York 11747
(631) 420-9300
*Attorneys for Plaintiff*

## **DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.